## MATTER OF McILVAINE.

*Supreme Court, First District; General Term, Nov.,* 1862.

JURISDICTION OVER INFANT'S REAL ESTATE.—NECESSITY OF REF-
ERENCE TO ASCERTAIN FACTS.

Under 2 Rev. Stat., 195, §§ 174, 175,—empowering the court to direct the dispo-
sition of an infant's real estate for his support, maintenance, and education,
and in a summary manner, by reference, to inquire into the merits of the ap-
plication,—the court may proceed summarily without a reference, if the facts
are made to appear so as to show a clear case where the disposal of the estate
is necessary and proper for any of the purposes indicated by the statute.

Appeal from an order directing the mortgage of an infant's
real property.

The infant, Caroline F. McIlvaine, of the age of nineteen years
and nine months, presented her petition to the court, verified by
her own affidavit, and that of John L. McIlvaine, her next
friend, asking that her general guardian, Joseph W. Savage, be
directed to sell a portion of the infant's real estate, sufficient to
raise the sum of four thousand dollars, and to apply two thou-
sand dollars for the purchase of furniture, to enable the infant
to commence housekeeping, and two thousand dollars to be paid
to her in fifteen monthly instalments for her support. The in-
fant's property was devised to her by the will of her maternal
grandfather, and was of the value of $50,000. Savage, the
general guardian, was the father of the infant. The petition set
forth that in April, 1861, the petitioner was married to John L.
McIlvaine, and was at the date of the petition the mother of one
child ; that the real estate consisted mainly of vacant lots in the
22d ward, New York city, and that the income received there-
from was not sufficient for the petitioner's support, and that
her husband, from commercial disasters, was unable to support
her.

The answer of the general guardian was substantially as fol-
lows : That the mother of the petitioner, and wife of the re-

spondent, died in the city of New York in June, 1843, leaving her surviving the said petitioner, then aged seven months, and another daughter, Josephine W., then aged three years, her only children.

That both said children, being naturally of delicate constitutions (especially the petitioner), have from that time to the present, required and received from respondent the most unremitting care and attention, and unusual expenditures of money on their behalf for travelling and physicians' bills, and for their comfortable maintenance, besides the surrender of much of respondent's time and business pursuits.

That in the month of March, 1861, the respondent's said daughter (the petitioner) being in very ill-health, he was advised by his physician to remove her for a time to Fredericksburgh, in the State of Virginia, for a change of climate, and he started for that place with her, accompanied by his sister. At Philadelphia, where respondent stopped a few days with his daughter, the said John L. McIlvaine was for the first time introduced to petitioner by a mutual friend. As respondent was about leaving Philadelphia for Fredericksburgh, he received a communication, making it necessary for him to return immediately home, which said McIlvaine learning, he told respondent that he was going directly on to Memphis, by way of Fredericksburgh, and volunteered to accompany respondent's daughter and sister as far as that place. Respondent being informed that said McIlvaine was a gentleman, and a suitable person to whom might be intrusted the protection of the petitioner and her aunt, and, also, that he was engaged to be married to a respectable lady in Philadelphia, accepted his offer, and the party proceeded to Fredericksburgh without respondent. Having arrived at Fredericksburgh, said McIlvaine borrowed from respondent's sister, as he is informed by her, a portion of the money which the respondent had given her with which to pay her expenses to Virginia, on the promise of immediately returning it; but he did not, and never has returned it. On account of apprehended political troubles the petitioner and her aunt returned to Washington, said McIlvaine accompanying them to that place, where they were obliged to remain on account of his inability to return the money borrowed as aforesaid, and which he had spent for his own purposes, and

they were obliged to stop at Washington until respondent could forward money to petitioner and her aunt with which to get home.

That said John L. McIlvaine, taking advantage of his position as such protector, and of the invalid condition of the petitioner, contracted with her a secret and clandestine marriage at Washington on their return there, without the knowledge of respondent or his said sister, and such fraudulent alleged marriage was not made known to them, or to any of petitioner's family until some time after her return from her journey to respondent's house.

Respondent states that he has been advised by his daughter's physician, and believes that at the time of such marriage, her mind was affected by the state of her health in such a way as to expose her more readily to the artifices of said McIlvaine, and that respondent believes that had she been in her usual health, she would not have contracted said marriage, and respondent has since been informed by his said daughter that the marriage was sudden and unpremeditated on her part. Respondent states on information and belief, and therefore charges, that said McIlvaine having learned that the petitioner was possessed of considerable property, fraudulently planned and consummated said marriage solely for the purpose of securing or enjoying the avails of said property, and that his offer to accompany the party to Virginia and back to Washington, was in order that he might endeavor to effect such marriage.

Respondent states on information and belief that all said McIlvaine's relatives reside at the South, in the State of Louisiana, that he is not possessed of any property, unless it be a few slaves in that State, which he claims to own, but which are believed to be of no marketable value; that he has been repudiated by his father for habits of dissipation and extravagance; that he has had no business since respondent's acquaintance with him, and is now without business, and is not possessed of business habits, and that owing to his habits and character, he is utterly unfit to have charge of petitioner's property.

Respondent states that since his daughter's said marriage, he has been compelled to personally attend to the application of the moneys advanced for her support, and that frequently when he has given her money, said McIlvaine has possessed himself

of it and squandered the money given for her personal expenses, without benefit to her; that respondent has advanced money for paying all the board-bills of his daughter and her husband, and necessary expenses since they have lived together, and entirely supported them, and has expended for that purpose from July, 1861, to August, 1862, about $1,700, and that he has applied all the moneys received by him from her estate for her benefit and support, and is now so applying them; that she is living with her husband in the State of New Jersey, where respondent resides, and has a maintenance in every way comfortable and suitable for her; that he does not think it necessary for her to keep house at present, or advisable for her to have her property sold at present to enable her to do so. Respondent believes that the petitioner has no intention of keeping house at present, and he does not believe that her health would permit her doing so.

Respondent says that his two daughters are entitled in equal shares to certain real estate in this city, most of which is unproductive. Some of the property has been partitioned, some of it sold in partition proceedings, and some of it is now being partitioned.

Most of the time since respondent has had charge of the estate, it has been, and now is, involved in expensive litigations, resulting from the construction of the will of Francis Child, the original owner of the property, and from various former decrees and legal proceedings; and at no time have the proceeds and income of the property sufficed for the expenses thereof, and the support of respondent's said children; but that respondent has been obliged to advance money from his own private funds for that purpose, and that his said children are now indebted to him several thousand dollars over and above his receipts.

Respondent says that the income of the petitioner's property, together with what respondent does and is able and willing to advance to her, is amply sufficient for her support in a comfortable and suitable manner; and that if it were absolutely necessary to raise money from the property, it would be much more advantageous that it should be done by mortgaging rather than by selling it.

Respondent states that, owing to the present unsettled condition of the country, no fixed value can be put upon said real

estate, but that it will not be possible at the present time to sell it for any thing like its real value.

Respondent further says, that a sale of a part of the petitioner's property has recently been ordered in a partition suit in this court, and that the same was duly advertised and offered at public auction, but that the price bid therefor was so inadequate that the referee did not sell the same.

Respondent states that he has been for some time engaged in making up his account as guardian of his said daughter's estate, that the same is nearly completed, and will be ready to be presented in the court the present month.

Respondent states that said petitioner has informed him recently that she did not wish him to make out an account, but respondent has thought proper to do so; and he states on information and belief that said petition is not voluntary on her part, but was signed by her while in very ill health (she having been recently confined), without understanding the same, and under the direction or compulsion of her said husband, and is fraudulently presented by him to this court, and that it is designed thereby to procure moneys solely for his benefit.

Respondent states that said McIlvaine recently threatened, as respondent is informed, that if he did not furnish him, said McIlvaine, with money, he would take his wife to New Orleans, and respondent has been informed and believes that said McIlvaine has recently tried to negotiate a loan in this city, to be secured by the obligation of the petitioner, payable when she should come of age, with interest thereon from 50 to 100 per cent. per annum, and that said McIlvaine endeavors, in every possible manner, to prejudice his wife against the respondent, and to keep her from intercourse with him, in order that he, said McIlvaine, may be enabled to improperly influence her and get her property into his entire control, with the ultimate view of securing it for his own benefit, when she shall come of age.

Respondent states that in his opinion said McIlvaine has not from the time of living with his wife until this date furnished one dollar for the support of himself, his wife, or child, but that the same has all been paid out from the income of his wife's property, and with money advanced by respondent beyond the income.

The answer also set forth fully and in detail the amount and nature of the infant's property.

On the petition and answer, Mr. Justice Leonard ordered that the said Joseph W. Savage, the general guardian of the petitioner, as soon as practicable, raise the sum of two thousand dollars upon mortgage of so much and such part of the real estate of the petitioner situate in the city and county of New York as should be sufficient security therefor, and that out of the said sum of two thousand dollars, and out of the income of the estate of the petitioner now in his hands or which may hereafter come into his hands, he pay to the petitioner upon her separate receipt the sum of one hundred and fifty dollars on the first day of each and every month until she should attain the age of twenty-one years.

The guardian appealed.

*Tracy, Wait & Olmsted*, for the appellant.—I. The Court of Chancery has no inherent original jurisdiction to direct the sale of an infant's real estate. (Russell *a*. Russell, 1 *Mall.*, 527, and cases there cited; Rogers *a*. Dill, 6 *Hill*, 415; Baker *a*. Lorillard, 4 *N. Y.* (4 *Comst.*), 257; Matter of Turner, 10 *Barb.*, 552; Hyatt *a*. Seeley, 11 *N. Y.* (1 *Kern.*), 52; see opinion by DENIO, J.)

II. Hence, in ordering such sales, the provisions of the Revised Statutes must be strictly followed. Those provisions were not complied with in the present instance. There was no guardian appointed, or bond given and filed, or other proceedings had as required by statute. (2 *Rev. Stat.*, 194, 195, §§ 170, 175, 176; *Supreme Court Rules*, 67; Matter of Thorne, 1 *Edw.*, 507.)

III. It does not appear that the interests of the infant are to be promoted by the present proposed mortgage. On the contrary, it would be an injudicious disposition of the estate. (2 *Rev. Stat.*, 5 ed., 275, § 105.)

*George W. Stevens*, for the respondent.

LEONARD, J.—All the facts were before the court when the order was made. The application was opposed, and called out every fact and objection that could be made. Under these cir-

cumstances a reference was unnecessary to enable the court to ascertain what was proper to be done in the premises.

The statute conferring discretion upon the court in a proper case to direct a disposition of the real estate of an infant for his support, maintenance, and education, is very broad. It is whenever it shall satisfactorily appear that such disposition is necessary and proper. (3 *Rev. Stat.*, 275, § 105, 5 ed.; 2 *Ib.*, 195, § 175.)

The previous section authorizes the court to proceed in a summary manner, by reference, to inquire into the merits of the application. The reference is not necessary to give the court jurisdiction. That was acquired by the presentation of the petition showing a case existing wherein an order of reference or other proceeding under the statute might be taken. (*Sedgwick on Stat. and Const. L.*, 370.)

The provision for a reference is not mandatory. It is not "of the essence of the proceeding." The court may proceed summarily without a reference, if the facts are made to appear so as to show a clear case, where the disposition of the estate of the infant is necessary and proper for any of the purposes indicated by the statute. Such I conceive to be the case here presented.

I advise the affirmance of the order.

INGRAHAM, P. J., and PECKHAM, J., concurred.

---

## THOMPSON a. CULVER.

*Supreme Court, First District; General Term, Nov.,* 1862.

### VACATING ATTACHMENT AFTER JUDGMENT.

A motion to vacate an attachment issued as a provisional remedy may be made after judgment entered in the action.

Appeal from an order denying a motion to set aside an attachment.