## HENRIETTA ALDRICH, APPELLANT, v. MARGARETTA FUNK AND OTHERS, RESPONDENTS.

*Devise to a widow so long as she remains unmarried — the estate vests in the remainderman on the day of her marriage — when a clause, giving control of property to executors, will not be held to create a trust — sale of an infant's estate in real property — what interest may be sold — jurisdiction of a County Court over the proceedings — when a petition will be held sufficient — objections to the validity of the proceedings, not taken upon the trial, cannot be taken on an appeal — when the court will assume that the application was made by the next friend — the failure of the court to order a reference to ascertain the truth of the matters contained in the petition is not fatal to the proceeding — when the infant will be held, by her laches and acts, to have ratified an invalid sale.*

In this action, brought to recover the possession of the undivided one-half of a lot in Troy, the plaintiff and defendants derived their title from one Fonda, who died in 1850, leaving him surviving a son, Philip, then about twelve years old, a daughter, Henrietta, the plaintiff, then about three years old, and a widow. By his will he gave and devised all his real and personal estate to his wife during her life and as long as she remained a widow, and after her death or the day of her marriage, he gave and devised the same to be equally divided among his two children, if they should be of the age of twenty-one years, if not, to remain under the control of his executor till they should each have attained that age, and then to be divided equally between them, their heirs and assigns. In 1856 the widow married J. G. Holmes, and thereafter, in 1863, acting as trustee for the plaintiff, joined with Philip Fonda, who was then of age, in conveying the lot to one Spath, for the consideration of $900, $500 of which was secured by

a bond and mortgage, executed by Spath to Martha Holmes, as trustee for the plaintiff, which contained a provision that at the time when the said sum should become payable the said plaintiff should tender and give to Spath a quit-claim deed of the lot.

In 1864 the plaintiff, who was then nearly eighteen years of age, and had married H. B. Aldrich, being desirous of obtaining the money secured by the bond and mortgage, which would not be due until a time at which she would have been twenty-one years old, applied, through Mrs. Holmes, to Spath, who consented to pay the money, in advance of the time fixed, provided he could obtain a valid deed from the plaintiff. To accomplish this a petition was presented to the County Court of Rensselaer county, signed and verified by the plaintiff, in which she described the premises, stated her interest therein and how derived, her age, the deed to Spath, that her interest was unproductive and liable at any time to be partitioned; that she had no general guardian, and prayed that James Thorn, of Troy, might be appointed her special guardian for the purpose of selling such real estate.

The court investigated the facts and made an order appointing Thorn such special guardian upon his executing a bond, with sureties, as prescribed in the order. Thereafter Thorn, having executed a bond and had it approved by the court, made a report, under oath, stating that he had entered into an agreement, subject to the approbation of the court, with Spath for the sale of all the right, title and interest of the said petitioner to the said real estate for the sum of $500 in cash. This report having been confirmed by the court, a conveyance was executed by the special guardian, upon the receipt of which Spath paid the sum of $500 to Thorn, who, after deducting the costs of the proceeding, paid the balance to Mrs. Holmes, who receipted for the same.

The evidence showed that the plaintiff lived with her mother previous to and at the time of her marriage, and when the proceedings were prosecuted for the sale of her interest in the real estate, and that after such sale, and for a period of about nine years, she resided within a quarter of a mile of the residence of her mother until the death of the latter in 1874, and that during such time she saw her mother nearly every day. The plaintiff, who came of age in May, 1868, without offering to return the money which was paid for the premises, commenced this action of ejectment on May 5, 1884, against the defendant Margaretta Funk and her tenants; Margaretta having purchased the lot from Spath for a valuable consideration in 1865, and being in the actual possession thereof, claiming title thereto.

*Held,* that by the marriage, in 1856, of Martha Fonda, the widow of John Fonda, the plaintiff and her brother Philip became vested in fee as tenants in common, share and share alike, of the premises in question, either as devisees or as heirs of their father.

That the clause " to remain under the control of my hereinafter named executor," contained in the will, did not create a valid trust or power in trust.

That the sale could not be regarded as having been made contrary to the provisions of the will.

That the plaintiff possessed such an interest in the land as authorized its sale, under the proceedings instituted therefor, under the provisions of the Revised Statutes.

That the County Court of Rensselaer county possessed jurisdiction to entertain the proceedings.

That the facts stated in the petition complied substantially with the requirements of the statute.

Upon the argument of the appeal at the General Term the counsel for the plaintiff claimed that the proceedings were fatally defective, for the reason that it did not appear that the application was made by the next friend or guardian of the infant.

*Held,* that the objection should have been taken when the petition was offered in evidence, as the defendants might have possibly supplied the seeming omission.

That, as the statute does not describe any particular form to be observed by the person who presents the application as next friend, and nothing appeared to the contrary, the court might properly assume that the ceremony was sufficiently observed, in getting the application before the court, to confer jurisdiction; that a departure from the practice prescribed by the rules of the court did not invalidate the proceedings.

*In the Matter of Whitlock* (19 How., 380); *O'Reilley* v. *King* (28 id., 409); *Cole* v. *Gourlay* (79 N. Y., 528) followed.

The further objection was made upon the hearing, that no reference was ordered by the County Court to ascertain and report the truth of the matters contained in the petition.

*Held,* that, as no such objection was made at the trial, it was too late to raise it upon appeal.

*It seems* that such omission would not have been fatal to the proceedings, even though the question had been properly raised at the trial, as it was the intention of the legislature that such inquiry might be made by the court, or by a reference to a master, as the court should deem proper, thus leaving the matter to its discretion.

*Matter of McIlvaine* (15 Abb. Pr. R., 91) followed; *Matter of Valentine* (72 N. Y., 185); *Battell* v. *Torrey* (65 id., 294); *Ellwood* v. *Northrup* (106 id., 173) distinguished.

*Held,* further, that as it appeared that the plaintiff was, when the sale of 1864 occurred, upwards of seventeen years of age, and that nearly nineteen years had elapsed since she became of age, before she brought this action against a *bona fide* purchaser of the premises, without tendering or offering to return the consideration money which she must be assumed to have received, she should be held to have ratified and confirmed the sale, which was made upon her petition and by her procurement, and the fruits of which she has received and enjoyed.

*Crummey* v. *Mills* (40 Hun, 370); *Medbury* v. *Watrous* (7 Hill, 110); *Henry* v. *Root* (33 N. Y., 526); *Lynde* v. *Budd* (2 Paige Ch., 191) followed; *Green* v. *Green* (69 N. Y, 553) distinguished.

APPEAL by the plaintiff from a judgment entered in Rensselaer county in the above entitled action, in favor of the defendants, upon the report of a referee.

*Hunt & Whedon*, for the appellant.

*J. K. Long* and *George Day*, for the respondents.

INGALLS, J.:

This action is instituted by the plaintiff to recover possession of the undivided one-half of lot No. 151 Third street, in the city of Troy. The plaintiff and defendants derive title to the premises from John W. Fonda, as the common source of title. The plaintiff, as a devisee under the last will and testament of said John W. Fonda, the defendant Margaretta Funk, as a purchaser of the premises for a valuable and adequate consideration from William Spath, who was, at the time of such purchase in 1865, in the actual possession and occupancy thereof, claiming title thereto. Since her purchase the defendant has been in the actual possession of the premises, claiming title thereto under her deed from Spath. When the defendant Margaretta Funk purchased the premises the buildings thereon were in a dilapidated condition, and were taken down, and a substantial brick dwelling-house was erected. The title of the said defendant had never been questioned until the commencement of this action in May, 1884. John W. Fonda, who resided in the city of Troy, made his last will and testament, bearing date October 25, 1850, as follows: "I, John W. Fonda, of the city of Troy, in the county of Rensselaer and State of New York, being of sound mind, do hereby make this my last will and testament, to wit: First. I will and direct all my just debts and funeral charges be paid by the executor and executrix hereinafter named. Secondly. I give and devise to my wife Martha all my real and personal estate of every name and nature, wheresoever the same may be, for her use and benefit during her life and as long as she may remain a widow, and after her death or day of marriage, *then I give and devise* all the real estate to be equally divided among my two children, if they should be of the age of twenty-one years, if not, to remain under the control of my hereinafter named executor till they shall have attained the ages of twenty-one years each, then I will the said real estate to be equally divided between my two children, their heirs and assigns. Thirdly. I do will and declare that the devises and bequests hereinbefore named and made to my wife Martha are by me meant and intended to be in lieu, bar and satisfaction of all

and every claim of dower or thirds she could or by law might have at the time of my decease, of, in or to my estate and effects, real or personal, or any part thereof. Lastly. I do hereby nominate and appoint John Gardner, of the city of Troy, executor, and my wife Martha, executrix, of this my last will and testament, and I do hereby revoke all and every former will by me made. In witness whereof, I have hereunto set my hand and seal this 25th day of October, 1850.

"JOHN W. FONDA. [L. S.]

"Signed, sealed, published and declared by the testator, John W. Fonda, to be his last will and testament in the presence of us, who at his request, in his presence and in the presence of each other, have subscribed our names as witnesses.

"JAMES THORN,
    "County of Rensselaer, State of New York.
"CHARLES COLE,
    "County of Rensselaer, State of New York."

He died about the 1st day of November, 1850, and the will was admitted to probate November 16, 1850, as a will of real and personal estate. John W. Fonda left him surviving his widow, Martha F. Fonda, and two children, Philip W. Fonda, who was at the death of his father twelve years of age, and Henrietta, the plaintiff, who was three years of age. In 1854 John Gardner, who was named in the will as executor, was removed from such office by the surrogate of Rensselaer county. The widow, then Martha F. Fonda, was the sole remaining executrix. In 1856 she married James G. Holmes. Philip W. Fonda, on the 14th day of September, 1863, being then of age, with his mother, acting as trustee for Henrietta, the plaintiff herein, conveyed the premises to said William Spath, for the consideration of $900, taking back a bond and mortgage upon the premises for $500 to secure a portion of the purchase-money, which mortgage, with the bond accompanying the same, was executed by the said William Spath to Martha F. Holmes, as trustee for Henrietta Fonda, her daughter. The mortgage contained this provision: "Provided that at the time when the said sum of five hundred dollars shall become payable and due, the said Henrietta Fonda shall tender and give to said William Spath a quit-claim deed

for the premises hereinbefore described. The said amount of five hundred dollars being a part of the purchase-money." In the year 1864 the plaintiff, being then nearly eighteen years of age, and being the wife of Henry B. Aldrich, to whom she was married in 1864, desired to obtain the money secured by the bond and mortgage, and through her mother, who had assumed to act as her trustee, and with whom she had resided up to her marriage, and with whom she was then residing, applied for the money. Mrs. Holmes, who then resided at Jeddo, Niagara county, in this State, visited Troy for the purpose of obtaining such money for her daughter, the plaintiff herein. A question was raised in regard to the conveyance by Henrietta, which was provided for in the mortgage, she not having reached majority, being only about eighteen years of age. And the money by the terms of the mortgage was made payable in five years from the date thereof, which would extend to a period when she would become twenty-one years of age. But to oblige the plaintiff, for whom her mother was acting. Mr. Spath consented to pay the money in advance of the time fixed therefor, provided he could obtain a valid deed from Henrietta. To accomplish this an application was made to the County Court of Rensselaer county, where the premises were situated, for leave to sell and convey the interest of the plaintiff in such premises. The petition was signed and verified by Henrietta Aldrich, the plaintiff, in which she stated, among other things, that she was seventeen years of age, and described the premises, and stated her interest therein, and how derived, and the fact that her brother Philip W. Fonda had conveyed his interest in the premises to William Spath, and that her mother had joined in the deed; that the premises were worth $900; and that her interest therein was unproductive and liable any time to be partitioned by action, which would be expensive; that she owned no other personal or real estate, except wearing apparel. She prayed the appointment of James Thorn, who resided in the city of Troy, as special guardian, for the purpose of selling such real estate. She stated further that she had no general guardian. The court entertained the proceeding and investigated the facts, and made an order appointing Mr. Thorn such special guardian, upon his executing a bond, with sureties, as prescribed by the order, which he did, and the same was approved by the court.

The special guardian reported to the court a contract for the purchase of the said real estate, as follows ·

## RENSSELAER COUNTY COURT.

| |
|---|
| IN THE MATTER OF HENRIETTA ALDRICH, INFANT, FOR THE SALE OF CERTAIN REAL ESTATE. |

To the Honorable GILBERT ROBERTSON, Jr., *County Judge of the County of Rensselaer :*

In pursuance of an order of this court made in the above matter on the 29th day of December, 1864, authorizing and empowering me, as the special guardian of the infant therein, to contract for the sale and conveyance of all the right, title and interest of the said infant in the real estate mentioned and described in the petition of the said infant in this matter, dated the 23d day of December, 1864, and to report upon oath the terms and conditions of the agreement made by me with the purchaser or purchasers before executing any deed or conveyance of the said premises, I, the said special guardian, do certify and report that I have entered into an agreement, subject to the approbation of this court, with William Spath of the city of Troy, for the sale of all the right, title and interest of the said petitioner to the said real estate for the sum of $500 in cash on the executing and delivery to him of the deed of the special guardian, duly appointed for that purpose. And I do further certify and report that the costs and disbursements of these proceedings amount to thirty dollars after deducting which sum from the purchase-money as aforesaid there will remain the sum of $470. And I further report that the above are the best terms upon which I could sell the said premises. All of which is respectfully submitted.

Dated, *December* 30, 1864.

JAMES THORN.

The report was duly verified by the oath of the special guardian which accompanied the report. The report was confirmed by the court and a conveyance was directed, which was executed by the special guardian in due form to William Spath. And the deed recited the proceedings which had been taken in the County Court

with considerable particularity. Upon the receipt of the deed William Spath paid to William Thorn, the special guardian, the money, who, after deducting thirty dollars, the costs of the proceedings, paid the balance to Mrs. Holmes, the mother of the plaintiff, who receipted the same. The evidence shows not only that the plaintiff lived with her mother previous to and at the time of her marriage, and when the proceedings were prosecuted for the sale of her interest in the real estate, and that after such sale and for a period of about nine years she resided within a fourth of a mile of the residence of her mother, and there resided until the death of the latter in 1874, and that during such time she saw her mother nearly every day. It is very evident from all the facts and circumstances developed by the evidence that the sale of the real estate was with the knowledge, consent and by the procurement of the plaintiff, who had attained an age when she was capable of understanding and appreciating her rights. We think it may be fairly inferred from all the circumstances that the plaintiff received and enjoyed the proceeds of the sale, especially so as she did not deny the same upon the trial, which she might have done as a witness if it were otherwise. The silence of the plaintiff for such a length of time, in regard to her pretended claim, after the sale and after the death of her mother is a significant circumstance against the same. The plaintiff has never offered to return the money which was paid for the premises, and which it is but reasonable to assume she received. Spath purchased in good faith and paid an adequate consideration for the premises, and the defendant, Margaretta Funk, purchased the same of Spath and paid therefor the full value, and has since occupied the premises. The equities seem undeniably with the defendants who are entitled, we think, to every reasonable intendment in support of their title. By the will of John W. Fonda the plaintiff became seized of a vested estate in the land, subject to the right of the widow of the testator to use and enjoy the same during her natural life, or until she should again marry. She married James G. Holmes in 1856, and from that period she ceased to have any interest in the premises, and the title of the plaintiff became free from incumbrance. (*Ackerman* v. *Gorton*, 67 N. Y., 63; *Livingston* v. *Greene*, 52 id., 118; *Lawrence* v. *Cooke*, 104 id., 632; *M. Life Ins. Co. of N. Y.* v. *Shipman*, 12 N. Y. State Rep., 802; *Moore* v. *Littel*, 41

N. Y., 66; *Radly* v. *Kuhn*, 97 id., 27, 35; *Tracy* v. *Ames*, 4 Lans., 500; *Manice* v. *Manice*, 43 N. Y., 380.) By the clause in the will "if they should be of the age of twenty-one years, if not, to remain under the control of my hereinafter named executor, till they shall have attained the age of twenty-one years each, then I will the said real estate to be equally divided between my two children, their heirs and assigns." The testator evidently intended to refer not to the period when the estate should vest in the children, but to the time when they should enter upon the actual possession thereof, or when the division should take place. The expression, "to remain under the control of my hereinafter named executor," is so vague and indefinite that it is really difficult to apprehend what the testator intended thereby. No valid trust was created by that provision; there is no authority conferred upon the executor to receive the rents and profits, nor is there any direction in regard to the disposition thereof. (*Chamberlain* v. *Taylor*, 105 N. Y., 191.) Nor does the will direct in what manner or for what purpose such control should be exercised. (1 R. S. [Edm. ed.], p. 678, § 55.) Such provision is equally ineffectual to create a power in trust as no specific duty is conferred upon the executor, nor is he vested with any specific authority over the real estate. Indeed, Gardner, the executor, did not assume to exercise any control of the real estate, and was removed as executor by the surrogate of Rensselaer county in the year 1854. It is apparent from the conduct of Gardner, and of all the parties interested in the estate, that no authority was recognized in him to control the same in any respect. The sale cannot be regarded as having been made contrary to the provisions of the will. (*Lawrence* v. *Cooke*, 104 N. Y., 632; *Manice* v. *Manice*, 43 id., 303; *Weeks* v. *Cornwell*, 104 id., 325.) The plaintiff possessed such an interest in the land as authorized its sale, under the proceedings instituted therefor under the provisions of the Revised Statutes, entitled, "Of proceedings in relation to the conveyance of lands by infants, and the sale and disposition of their estates." (Vol. 2, p. 202, Edm. ed.) The County Court of Rensselaer county, in which the premises were situated, possessed jurisdiction to entertain the proceedings. (*Dodge* v. *Stevens*, 105 N. Y., 585; *Jenkins* v. *Fahey*, 73 id., 355.) The proceedings are assailed by the plaintiff, upon the grounds that in some respects

they were irregular, and to such an extent that no title was conveyed thereby to the purchaser as against the plaintiff, who was an infant. When the petition was offered as evidence it was objected to by the plaintiff's counsel upon the grounds "it does not furnish the foundation of any proceedings, in any court. Second. It is not executed in the manner required by law, as any paper is required to be the foundation of a proceeding in court, or become matters of record." The objections are so vague and indefinite that it is not easy to perceive what question the plaintiff's counsel intended to raise. No particular defect is specified, which was necessary in order to enable the court to understand whether they were aimed at a matter of form or substance. Again, if the defect complained of had been specified, it might have been supplied, if any was found to exist. The petition seems to contain sufficient to answer the requirement of the statute, and to constitute at least a substantial compliance therewith. The defendants offered in connection with such petition, from the record of the Rensselaer county clerk's office, all orders and proceedings had and taken upon, and under said petition, including the order appointing James Thorn special guardian to sell the real estate of Henrietta Aldrich, the petitioner therein and plaintiff in this action, and the bond of such special guardian. To this offer the plaintiff's counsel objected upon the same grounds interposed to the petition. "Also as affording no grounds for the court to entertain the proceeding." The objections thus interposed, are equally insufficient to raise any question, or to prove available to the plaintiff, the proceedings were admitted by the referee, and are contained in the printed case. The defendants offered in evidence the deed executed by the special guardian James Thorn, to William Spath, to which the plaintiff's counsel objected upon the same grounds. And further that the deed was void, as being in contravention of the statute relating to the sale of infant's real estate. The objections were overruled and the deed was received. Upon the presentation of the case in this court the counsel for the plaintiff stated certain objections to the proceedings, which are claimed to be fatal thereto, which we will proceed to consider. One is that it does not appear that the application was made by the next friend or guardian of the infant. No such objection was pointed out when the petition was

offered. If it had been specified the defendants might have possibly supplied the seeming omission and there is nothing to show that it could not have been done. The petition states that the plaintiff was of the age of seventeen years, and we may assume that she was competent to understand the same, and to appreciate her rights. She had also the co-operation and advice of her mother, whom she intrusted with the proceeding, and who may have acted as her next friend. The evidence shows that she was actively participating in the proceedings. The statute does not prescribe any particular form to be observed by the person who presents the application as next friend, and nothing appearing to the contrary, we may properly assume that the ceremony was sufficiently observed, in getting the application before the court, to confer jurisdiction. (*In the Matter of Mary Jane Whitlock*, 19 How., 380; *O'Reilley* v. *King*, 28 id., 409.) In the case last cited Judge MONELL remarks: " I see no reason why he may not by his next friend apply orally; the courts have established rules on this subject, but they are mere rules which the court may in its discretion at any time disregard." In *Cole* v. *Gourlay* (79 N. Y., 528), Judge MILLER, at page 535, says: "A mere departure from a rule of the court does not impair the validity of the proceedings." The learned judge refers in this case to *O'Reilley* v. *King* (*supra*). It is further objected that the affidavit of disinterested persons was not produced. No such objection was made at the trial. It does appear that the affidavit of Alfred B. Nash was furnished, wherein he stated that he was acquainted with the situation and value of the premises, and that they were not worth to exceed $800, and that he was not related to the petitioner, or in any manner interested. In *Cole* v. *Gourlay* (*supra*), this objection has been answered. It was further objected, in this court, that no reference was ordered by the County Court to ascertain and report the truth of the matters contained in the petition. No such objection was made at the trial. And we deem it too late to raise it upon appeal. We do not deem such omission fatal to the proceedings, even though the question had been properly raised at the trial. The Revised Statutes under which the application was made (vol. 2 [Edm. ed.], § 174, p. 203), provides, " upon the filing of such bond the court may proceed *in a summary manner*, by reference to a master, to inquire into the merits of such

application." We think it was the intention of the legislature that such inquiry might be made by the court, or by a reference to a master, as the court should deem proper, thus leaving the matter to its discretion. In some cases of this nature the facts are few and simple and easily ascertained, in others complicated and intricate ; and in the former no reference would be necessary, but in the latter hardly to be dispensed with. The view of the statute thus taken seems in harmony with its spirit, and necessitates only the interpolation of the word " or " to bring it clearly within the letter. It seems scarcely consistent to hold that the court proceeds in a summary manner to inquire into the merits of an application when a reference is directed to ascertain the facts. *In the Matter of McIlvaine* (15 Abb. Pr., 91), it was held by the General Term of the first district that the reference might be dispensed with. That was like the present, a proceeding under the Revised Statutes. Our attention has been called to the case *In the Matter of Benjamin Valentine, a Lunatic* (72 N. Y., 185), in which case it was held that a reference to inquire into the facts was necessary, for the reason that the statute, under which that application was made, expressly required such a reference (2 R. S. [Edm. ed.], 55, § 12), which is as follows : " On the presentation of such petition it shall be referred to a master." Comparing the two statutes referred to, it seems quite apparent that the legislature intended to make it discretionary with the court, in a proceeding for the sale of the real estate of an infant, whether to inquire into the merits of the application in a summary way, or to direct a reference. While the validity of such a proceeding depends upon an observance of the statute, yet a substantial compliance will preserve jurisdiction. The case last mentioned refers to *Battell* v. *Torrey* (65 N. Y., 294). It will be perceived that the omission complained of in that case was the failure by the special guardian to report, under oath, an agreement for the sale, leasing, or other disposition of the property of the infant. Such a report seems, from the facts of that case, to have been wholly omitted, and consequently there could be no confirmation by the court ; that was held to be a material defect in the proceedings, and fatal to their validity. By referring to section 177 of the statute in regard to the sale of the real estate of infants before referred to, we see that such a report, under oath, of an agreement

by the special guardian is required.   The language referring to the
agreement is : " The same shall be reported to the court on the oath
of the guardian making the same."   In the case at bar the evidence
shows that such a report was made, under oath, by the special guar-
dian in substantial compliance with such statute, which was confirmed
by the court.   The provisions of the statute under which those pro-
ceedings were instituted in 1863 seems to have been substantially
observed, sufficiently so to preserve the jurisdiction and to' render
them valid and effectual to convey the title in support of so clear
an equity in favor of the purchase.   We think this case is clearly
distinguishable from the case *In the Matter of Valentine, a Lunatic*
(72 N. Y., 185) ; *Battel* v. *Torrey*, 65 id., 294), above referred to.
We have not overlooked the case (*Ellwood* v. *Northrup*, 106 N. Y.,
173) recently reported.   From an examination of that case, we are con-
vinced that the case at bar is as clearly distinguishable therefrom as
it is in regard to the other cases referred to, and for the same reasons
above assigned.   It appears by reference to that case that the defects
in the proceedings by which the sale was made were the result of a
disregard of the provisions of the statute, which are mandatory.
The opinion, at page 184, contains the following: " No evidence
whatever was offered of any compliance with the provisions of the
statute above set forth, except the presentation to the Jefferson
County Court of a petition for an order of sale, and the appointment
of a special guardian to make such sale ; the appointment of such
guardian, and the execution by him of a bond and the approval
thereof by the county judge."   In that case there was a disregard
of the statute in reference to several provisions thereof which are
mandatory, and which were, at least, substantially observed in the
case at bar.   The case of *Cole* v. *Gourlay* (76 N. Y., 528), before
referred to, specifically disposes of several of the objections taken
to the proceedings in question, and the principle there enunciated,
which received the approval of the entire court, seems decisive of
this case.   When the sale occurred in 1864 the plaintiff was upwards
of seventeen years of age, and reached majority in 1868, and after
the lapse of nearly nineteen years, since she became twenty-one years
of age, brings this action against a *bona fide* purchase of the premises,
without tendering or offering to return the consideration-money
which she received therefor.   Under such a state of facts, we are

satisfied that she should be held to have ratified and confirmed the sale, which was made upon her petition, and by her procurement, and the fruits of which she has received and enjoyed. (*Crummey v. Mills*, 40 Hun, 370; *Medbury* v. *Watrous*, 7 Hill, 110; *Henry* v. *Root*, 33 N. Y., 526; *Lynde* v. *Budd*, 2 Paige Ch., 191; 1 Parsons on Cont., 281.) The case of *Green* v. *Green* (69 N. Y., 553) was decided upon a state of facts which were peculiar. The controversy was between father and son; and the delay in bringing the action of only about three years after the son became of age; and such little delay in bringing the action was referred to in the opinion as a circumstance bearing upon the question of ratification. This case is referred to in *Crummy* v. *Mills* (*supra*), as based upon the peculiar facts of that case, and exceptional. We cannot regard this case, when applied to the facts of the case at bar, as adverse to the doctrine of ratification above stated. We discover no sufficient ground for a reversal of the judgment, and the same must be affirmed, with costs.

LANDON, J., concurred.

LEARNED, P. J.:

By the marriage in September, 1856, of Martha F. Fonda, widow of John W. Fonda, deceased, and mother of plaintiff, the plaintiff and her brother, Philip W. Fonda, became vested in fee, as tenants in common, share and share alike, of the premises in question, either as devisees or as heirs of their father, John W. Fonda. The clause "to remain under the control of my hereinafter named executor," created no valid trust. It may perhaps have had the effect of making Gardner guardian of the children during minority, but it gave him no estate.

On the 1st of September, 1863, Philip W. Fonda, then of age, and Martha F. Holmes, formerly the widow of John W. Fonda, the latter describing herself as trustee of the plaintiff, conveyed the whole premises to one Spath, in consideration of $900. This gave Spath the undivided half which belonged to Philip, and purported also to convey the plaintiff's half. Under this conveyance Spath went into possession of the whole. He lived on the property, made repairs and paid taxes till he sold it. The deed was duly recorded in October, 1863.

Passing over, for the present, the proceedings of December, 1864,. we find that on the 20th of September, 1865, Spath and his wife conveyed the whole premises to defendant, Margaretta Funk, and the deed was recorded on the twenty-second.

The plaintiff came of age in May, 1868, and on the 5th of May,. 1884, she commenced this action of ejectment to recover the undivided half of the premises against Margaretta Funk and her tenants.

If the deed of 1863 to Spath conveyed plaintiff's title, she cannot recover. If it did not, then, at least, it made Spath her co-tenant. Being such, she must show against him or his grantees actual ouster (*Sharp* v. *Ingraham*, 4 Hill, 116), and cannot recover on mere proof of title. As the position which she claims is that of co-tenant, she. alleges that Margaretta entered about September 20, 1865, to the exclusion of plaintiff, and so continues. (Code, § 1515.) The defendant admits such possession, claiming to be the lawful owner. Now it appears, as above stated, that Margaretta took title from Spath, and that Spath had been, from September 14, 1863, in possession, "under claim of title, exclusive of any other right, founding his. claim upon a written instrument as being a conveyance of the premises in question." He did not go in simply as co-tenant under a. deed from Philip, but he went in as an absolute owner of the whole, under a deed which purported to be a conveyance of the whole, executed by Philip and also by one who claimed to be the plaintiff's. trustee. I do not see, therefore, why the ouster of plaintiff did not. commence when Spath took possession under the deed to him. If he had acknowledged her right, he would have been, on her own theory, a co-tenant lawfully in possession. But he denied that she had any right after he received the deed. Whatever ouster, then,. was done to plaintiff by defendant Margaretta, the same had been previously done by Spath.

If this be so, the plaintiff's right of action commenced when Spath, under the deed to him, excluded her from the enjoyment of her undivided half. (Code, § 369.) This was in September, 1863. The action must be commenced by the general rule within twenty years. (Code, §§ 365, 368, 369.) She was within the age of twenty-one when her cause of action first occurred, and remained under this disability till May, 1868. These four years and eight

months, therefore, are not part of the time limited for commencing the action. But the time limited must not be extended more than ten years after the disability ceased. (Code, § 375.) This section does not shorten the twenty-year limitation. (*Howell* v. *Leavitt*, 95 N. Y., 617.) But, in the view above expressed, the twenty-year limitation expired in September, 1883. To illustrate, let us suppose that when Philip and Mrs. Holmes conveyed to Spath in September, 1863, the plaintiff had been of full age, and that Spath had gone into possession, claiming title under a deed which purported to convey her share as well as Philip's; that he had continued in possession in this manner; if she had commenced an action of ejectment could Spath, in the face of his deed and his acts, have successfully claimed that he was only co-tenant in possession, and was recognizing her right? If not, then there was ouster enough to give a right of action. The plaintiff's infancy only extended the time for commencing the action. It did not affect the question when the right commenced.

The plaintiff insists that the statute of limitation does not run during a life estate. It is true that possession during the continuance of a life estate does not begin to be adverse as against a person entitled after the life estate. (*Fleming* v. *Burnham*, 100 N. Y., 1.) For the plaintiff has then no right of action to recover the possession. But the life estate of Martha F. Fonda ceased under the terms of the will in September, 1856, by her marriage. After that time the plaintiff and her brother were owners in fee. Even the clause about the control of the executor had become inoperative in December, 1854, when Gardner was removed from his office.

Of course, this is a question purely legal, yet I may say that all the equities are against the plaintiff for reasons which it is unnecessary to mention.

I therefore concur in the result of the opinion of my brother INGALLS.

Judgment affirmed, with costs.