THREE FOUR BUILDING CORPORATION, Plaintiff, *v.* ALFRED R. SIEGEL et al., Defendants.

First Department, May 22, 1945.

*Victor S. Gettner* of counsel (*Gettner, Simon & Asher,* attorneys), for plaintiff.

*Alexander Pfeiffer* of counsel (*Pfeiffer & Crames,* attorneys), for defendants.

Dore, J. The main issue on this submission of controversy under sections 546–548 of the Civil Practice Act is the jurisdiction or power of the Surrogate's Court to approve a lease of real property made by a testamentary guardian on behalf of infants.

On January 9, 1945, plaintiff made a written agreement with defendants to purchase from them all the outstanding capital stock of Jenrob Realty Corporation of which defendants were sole stockholders. The only asset Jenrob possessed was its rights as lessee under a lease covering premises 25–27 West 34th Street, New York, N. Y. The agreement provided that if Jenrob's lease was invalid plaintiff could cancel the agreement and recover the amount deposited as part of the purchase price.

In seeking judgment in its favor and the return of the down payment, plaintiff questions the validity of the lease held by Jenrob. That lease was entered into with the lessors of the

34th Street property, owners of the fee, among whom was a testamentary guardian of two infants, each of whom owned an undivided one-sixth interest in the property. The making of the lease by the testamentary guardian required judicial approval. Concededly, the lease was approved as to such testamentary guardian by decree of the Surrogate's Court of Suffolk County where the infants resided.

Plaintiff claims the Surrogate's Court has no jurisdiction to approve a lease of real property made by a testamentary guardian in behalf of infants, and that such power is vested only in the Supreme Court. Plaintiff also contends that even if the Surrogate's Court had jurisdiction to authorize the lease the procedure was fatally defective as (1) no special guardian was appointed; (2) no additional bond was required of the testamentary guardian and (3) the matter was not referred to a special master or referee.

Defendants contend that the Surrogate's Court which had appointed the testamentary guardian had jurisdiction under section 173 of the Surrogate's Court Act to approve the lease; that the testamentary guardian, having already posted bond in the sum of $208,000 as to each infant, an additional bond was not required; and that the appointment of a special guardian or a referee was not mandatory.

Section 2821 of the Code of Civil Procedure provided that "The surrogate's court has the like power and authority to appoint a general guardian, of the person or of the property, or both, of an infant, which the chancellor had, on the thirty-first day of December, eighteen hundred and forty-six. * * *." "Such power and authority," it further provided, "must be exercised in like manner as they were exercised by the court of chancery, subject to the provisions of this act." In considering this section, the Court of Appeals in *Matter of Bolton* (159 N. Y. 129, 135) held: "While the surrogate has ' the like power and authority to appoint a general guardian * * * of an infant, which the chancellor had,' it does not follow, as the appellants assume, that surrogates have the general authority over infants and their estates that was formerly exercised by the chancellor. The statute falls far short of making chancellors out of surrogates, so far as general jurisdiction over minors and their property is concerned."

However, on September 1, 1934, section 173 of the Surrogate's Court Act (formerly Code Civ. Pro., § 2821, renumbered § 2643 by L. 1914, ch. 443) was amended to read as follows: "§ 173. *Power of court to appoint guardians.* The surrogate's court has the like power and authority to appoint a

general guardian of the person or of the property, or both, of an infant, *and like power and authority over the property of an infant,* which the chancellor had, on the thirty-first day of December, eighteen hundred and forty-six. It has also power and authority to appoint a general guardian, of the person or of the property, or both, of an infant whose father or mother is living, and to appoint a general guardian of the property only, of an infant married woman. Such power and authority must be exercised in like manner as they were exercised by the court of chancery, subject to the provisions of this act.'' (Underscored language added by L. 1934, ch. 538.)

Plaintiff insists that it was never the intention of the Legislature by this amendment to do more than to make certain that the surrogate had full authority over the guardian appointed by him as to the investment of an infant's property and the application thereof for the support and education of the infant.

Such limited interpretation of the statute should be rejected. Section 173 of the Surrogate's Court Act as amended expressly provided at the time the decree in question was made, that the Surrogate's Court has, over the property of an infant, the power and authority which the Court of Chancery had. The chancellor clearly had authority over the property of an infant on the 31st day of December, 1846 (Rev. Stat. of N. Y. [3d ed., 1846], part III, ch. I, tit. II, § 218 *et seq.*). The legislative history of the 1934 amendment and the language added by the act reveal that its purpose was to remedy the surrogate's incomplete jurisdiction over the property of infants. (See *Matter of Vanderbilt,* 153 Misc. 884.) Madeleine T. Edmonds, maternal aunt of the infants, had been duly appointed testamentary guardian of the persons, property and estates of the infants under letters of testamentary guardianship issued on November 8, 1939, by the Surrogate's Court of Suffolk County where the infants resided, and has ever since been acting as such under surety company bonds in the sum of $208,000 as to each infant. The Surrogate's Court of Suffolk County had acquired jurisdiction over the persons of the infants. If there were no such guardian of the property, the Supreme Court in the ordinary case would, of course, have complete jurisdiction. That state of facts is not here presented. On the basis of the proceedings instituted before it we hold that the Surrogate's Court of Suffolk County had jurisdiction and power to approve the lease entered into by the testamentary guardian.

On the facts disclosed in the proceedings before it, we think it was not mandatory that the Surrogate appoint a special

guardian or require at that time an increase of the testamentary guardian's bond, or appoint a referee. Section 173 as amended provides that the power and authority granted to the Surrogate's Court over the property of infants must be exercised in like manner as such power and authority were exercised by the Court of Chancery '' subject to the provisions of this act,'' that is, of the Surrogate's Court Act. Section 64 of the Surrogate's Court Act provides that where an infant appears by his general guardian, the Surrogate must inquire into the facts and appoint a special guardian '' if there is any ground to suppose that the interest of the general guardian  *  *  * is adverse to that of the infant  *  *  * or that for any other reason, the interests of the latter require the appointment of a special guardian.'' Section 172 of the Surrogate's Court Act provides that a general guardian is one appointed by the Supreme Court or Surrogate's Court for an infant. Here the testamentary guardian had been appointed by the Surrogate's Court of Suffolk County. In the petition to the court for approval of the lease, the testamentary guardian was joined by one of the infants who was over the age of fourteen years. There was no adverse interest. The infants represented by their testamentary guardian under a substantial bond were fully protected. A prudent surrogate in the judicious exercise of his discretion will always scrutinize the proceeding with greatest care to see that there is no possibility of adverse interest and in a proper case, where the protection of infants requires it, will hold hearings and appoint a special guardian or direct a reference. Under the facts here disclosed, however, we cannot say that the learned Surrogate abused his discretion in not appointing a special guardian or directing a reference.

The testamentary guardian had filed with the Surrogate's Court of Suffolk County surety company bonds in the sum of $208,000 for each infant who had an interest in the property in question as well as in other property. The testamentary guardian at the time was acquiring no more than she already had, namely, the protection as such guardian of the infants' interests in the leased premises. When sufficient security to protect the infants' interests had already been posted by the guardian, there was no necessity for additional bonds at that time. If increase in the value of the infants' property or increased income requires an additional bond at any time in the future, application may be made on the infants' behalf to increase the security accordingly. Under the circumstances here disclosed, at the time of the application no additional bond was required.

Nor was a reference mandatory. In *Aldrich* v. *Funk* (48 Hun 367, 378) the question was whether in a proceeding under the Revised Statutes for the sale of an infant's property, it was mandatory upon the Court of Chancery to appoint a referee. Construing the Revised Statutes, the court said: " We think it was the intention of the Legislature that such inquiry might be made by the court, or by a reference to a master, as the court should deem proper, thus leaving the matter to its discretion. In some cases of this nature the facts are few and simple and easily ascertained, in others complicated and intricate; and in the former no reference would be necessary, but in the latter hardly to be dispensed with.''

In *Matter of McIlvaine* (15 Abb. Pr. 91, 97), also a proceeding under the Revised Statutes for the sale of an infant's interest in real estate, the General Term of the Supreme Court, First District, held that the reference might be dispensed with. The court said: '' The provision for a reference is not mandatory. It is not ' of the essence of the proceeding.' The court may proceed summarily without a reference, if the facts are made to appear so as to show a clear case, where the disposition of the estate of the infant is necessary and proper for any of the purposes indicated by the statute.''

Section 66 of the Surrogate's Court Act provides that in certain proceedings the surrogate may in his discretion appoint a referee to take and report to the surrogate the evidence upon the facts but there is nothing in the Surrogate's Court Act that makes it mandatory in all cases for the Surrogate to appoint a referee.

The Surrogate's Court had jurisdiction of the proceeding that was instituted before it. There was proof presented sufficient to justify and permit the Surrogate, in his sound judgment and discretion, under his power and authority over the person and property of the infants in question, to approve the lease entered into. The Jenrob Realty Corporation's title to its lease is valid.

Judgment should be directed for defendants requiring plaintiff to perform the contract of purchase and sale entered into, without costs.

MARTIN, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Judgment unanimously directed for defendants requiring plaintiff to perform the contract of purchase and sale entered into, without costs. Settle order on notice.